**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 13-CR-0003-001-CVE** |
| | ) | |
| **BRANDON ROYCE TAYLOR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Now before the Court are Defendant Taylor's Motion to Dismiss Count Seven and Count Twelve Based on Improper Congressional Delegation of Authority (Dkt. # 33) and Defendant Taylor's Motion to Suppress Evidence (Dkt. # 34). Defendant claims that law enforcement officers searched two residences without probable cause to obtain a search warrant, and all evidence obtained during the searches should be suppressed. He also argues that Congress improperly delegated authority to the United States Attorney General to classify certain types of firearms as destructive devices, and he should not be convicted or receive a sentencing enhancement for allegedly possessing a "Street Sweeper" shotgun. The government has filed responses (Dkt. ## 37, 38) to defendant's motions. The Court has reviewed defendant's motions and finds that an evidentiary hearing is unnecessary.[1]

---

[1] Although this Court routinely sets motions to suppress for an evidentiary hearing, Tenth Circuit precedent is clear that an evidentiary hearing is not always required. A defendant has the "burden of showing there are material facts in dispute, and an evidentiary hearing is only required when the motion to suppress 'raise[s] factual allegations that are 'sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue.'" United States v. Glass, 128 F.3d 1398, 1408-09 (10th Cir. 1997) (quoting United States v. Walczak, 783 F.2d 852, 856 (continued on next page)

## I.

On January 29, 2009, Tulsa Police Department (TPD) Officer J.E. Dupler appeared before a judge in Tulsa County, Oklahoma to apply for a search warrant for a residence located at 5647 N. Elgin Avenue, Tulsa, Oklahoma. He separately applied to a judge in Wagoner County, Oklahoma for a search warrant for a residence located at 4476 S. 211th East Avenue, Broken Arrow, Oklahoma. Dupler prepared the affidavit for search warrant for both residences and the same facts were provided in each affidavit.[2]

The affidavits state that Dupler is an officer in the TPD with four years of experience, and that he was assigned to Uniform Division North as a Directed Patrol Officer. Dkt. # 34-1, at 1. In addition to basic training provided to police officers in the TPD Academy, he has participated in numerous narcotics investigations and made drug related arrests, and he is a member of the Oklahoma Gang Investigators Association. Id. Dupler was contacted by a reliable confidential informant (RCI) and was told that Brandon Taylor was selling illegal drugs from a residence located at 5647 N. Elgin Avenue in Tulsa. Id. at 2. The RCI stated that Taylor did not live at the residence but he used the residence to store illegal drugs. Id. Dupler also learned from the RCI that Taylor

---

(continued from previous page)
(9th Cir. 1986)). In this case, defendant argues that search warrants were facially invalid because the affidavits did not state sufficient facts from which a magistrate could have made a finding of probable cause. Dkt. # 34. The government states that it does not intend to call any witnesses if defendant's motion to suppress is set for an evidentiary hearing. Dkt. # 38, at 1. The Court's review is limited to the facts stated in the police officer's affidavits and there are no disputed facts that the Court will need to resolve by consideration of additional evidence, and a hearing on defendant's motion is unnecessary under the circumstances.

[2] The parties have provided only the affidavit for a search warrant of 4476 S. 211th East Avenue, but they agree that the same factual basis was used for both affidavits. Dkt. # 34, at 3; Dkt. # 38, at 2.

was a member of the Hoover Crips Criminal Street Gang and, based on his training and experience, Dupler knew that gang members are likely to be involved in the sale of illegal drugs to further the criminal enterprises of the gang. Id.

Dupler and the RCI went to 5647 N. Elgin Avenue and the RCI identified the residence allegedly used by Taylor for the distribution of illegal drugs. Id. Dupler accessed the Tulsa Utilities Database and confirmed that Taylor was the listed resident for the property. Id. Dupler searched the Tulsa Regional Automated Criminal Information System (TRACIS) and located a Brandon Taylor who listed 5647 N. Elgin Avenue as his most recent address. Id. The TRACIS report contained a photograph of Brandon Taylor, and the RCI identified the person in the photograph as the person selling illegal drugs from the residence. Id. Taylor had a conviction for the trafficking of illegal drugs and he was under the supervision of the Oklahoma Department of Corrections until 2010. Id. Within the 72 hours before Dupler presented the affidavit to a magistrate, the RCI had observed or had knowledge that Taylor was in possession of crack cocaine at 5647 N. Elgin Avenue and the RCI reported that Taylor distributed the crack cocaine.[3] Id. Dupler states that the RCI had provided truthful and reliable information in at least six prior investigations, and the RCI's information had led to arrests within Tulsa County. Id. The RCI formerly sold crack cocaine, and the RCI was familiar with the appearance and methods of distribution of crack cocaine. Id.

In addition to verifying the information provided by the RCI, Dupler conducted his own investigation into Brandon Taylor's alleged trafficking of illegal drugs, and he learned that Taylor

---

[3] The affidavit states that "the RCI informed [Dupler] that they had observed a quantity of crack cocaine, packaged for sale, at the residence . . . ." Dkt. # 34-1, at 2. It is not clear from the context of the statement if the RCI personally observed the crack cocaine or if "they" is intended to reference a third party who gave this information to the RCI.

had taken measures to hide the location of his actual residence. On December 20, 2008, Taylor sought treatment at Hillcrest Hospital for a gunshot wound to the hand, and he claimed that he injured himself while cleaning a black Taurus .40 caliber handgun at his girlfriend's residence. Id. The girlfriend was identified as "Sharee Hanley," and her address was listed as 7646 S. 169th East Ave, Broken Arrow, Oklahoma. Id. Taylor was interviewed by TPD officers and he advised them that he was a convicted felon. Id. Taylor stated that his telephone number was 918-282-5173. Id. The Broken Arrow Police Department also intended to interview Taylor, but he left before they arrived to conduct the interview. The RCI had informed Dupler that the RCI had seen Taylor with a black semi-automatic handgun, and this generally fits the description of a .40 caliber Taurus handgun. Id. The RCI also claimed that Taylor kept a firearm on his person at all times, and he carried a firearm to protect himself and the proceeds of his drug sales. Id. at 3.

Dupler attempted to confirm the identity and address of Sharee Hanley through TPD and Broken Arrow Police Department records, but he found no records of any such person. He also discovered that the address provided by Taylor did not exist. Id. at 2. Dupler contacted the Oklahoma Department of Public Safety to determine if any person named Sharee Hanley had an Oklahoma drivers license or Oklahoma identification card, and there was no record of a Sharee Hanley. Id. Dupler did locate evidence showing that, on January 20, 2009, Janice "Sharee" Martin overdosed at 4476 S. 211th East Avenue and the contact person listed was "Brandon" with phone number 918-282-5173. Id. Dupler noted that Brandon Taylor gave the same telephone number to the hospital on December 20, 2008, and a TRACIS report confirmed that this number is linked to Brandon Taylor. Id. at 2-3. The number is billed at the address of 4476 S. 211th East Avenue, and Dupler found that the utilities for that address are billed to Martin. Id. at 3. Dupler conducted

additional research into Martin's background and found that she had made a report about a larceny from a vehicle at 5647 N. Elgin Avenue. Id. Martin told police that the residence was her rental property, but she claimed that no one lived at the house. Id. Martin listed her employer as Light Angle Construction and provided an address for her employer, and Dupler determined that Light Angle Construction was owned by Brandon Taylor. Id.

Dupler believed that Taylor likely maintained other locations for storing illegal drugs or money derived from the sale of illegal drugs and that Taylor concealed banking records or other documents that would disclose the location of his storage facilities. Id. at 3. Dupler states that the residences located at 5647 N. Elgin Avenue and 4476 S. 211th East Avenue are likely to be secondary storage facilities, but he believed that Taylor stored documents that would disclose the location of his residence or other storage facilities at these locations.

Dupler obtained search warrants for 5647 N. Elgin Avenue and 4476 S. 211th East Avenue, and he was authorized to search for "DRUG PROCEEDS, FRUITS, and INSTRUMENTALITIES in the unlawful distribution of controlled dangerous substances . . . ." Dkt. # 34-1, at 5. The search warrants were executed on January 31, 2009. Police seized cocaine, crack cocaine, methamphetamine, Ecstasy, and marijuana from 5647 N. Elgin Avenue, and police also found three assault rifles, two handguns, one rifle, and a drum-fed shotgun. Dkt. # 34, at 1-2. In addition, police seized over $4,000 in cash and two cellular phones from a vehicle parked in the driveway. Id. at 2. From the search of 4476 S. 211th East Avenue, police seized marijuana and methamphetamine, a

handgun, an AR-15 rifle, and over $100,000 in cash.[4] Id. Police also seized financial documents and photographs of Taylor. Id.

On January 11, 2013, a grand jury returned a 12 count indictment (Dkt. # 12) charging defendant with the following crimes: conspiracy to distribute cocaine base (crack) (count one); conspiracy to distribute marijuana (count two); possession of cocaine base (crack) with intent to distribute (count three); possession of cocaine with intent to distribute (count four); possession of methamphetamine with intent to distribute (count five); possession of marijuana with intent to distribute (count six); possession of a firearm in furtherance of a drug trafficking crime (count seven); maintaining a drug involved premises (count eight); money laundering (counts nine and ten); possession of a firearm and ammunition after prior felony conviction (count eleven); and possession of an unregistered destructive device (count twelve). A co-defendant, Thamous Taylor, was charged only with conspiracy to distribute marijuana (count two). After the Court entered a scheduling order, defendants moved for a continuance under the Speedy Trial Act, 18 U.S.C. § 3161 et seq., and the Court granted defendants' motion. The government subsequently filed a motion to continue the jury trial and that motion was also granted, and the jury trial of this matter is set for June 17, 2013.

**II.**

Defendant has filed a motion to dismiss counts seven and twelve of the indictment. He claims that Congress improperly delegated authority to the United States Attorney General "in establishing the definition and scope of a criminal statute," and that he should not be subject to a

---

4 The Court is relying on defendant's summary of the items seized during execution of the search warrants. For the purpose of ruling on defendant's motion to suppress, it is not necessary for the Court to have fully-executed returns from the searches of the residences, because the Court's review is limited to the facts stated in Dupler's affidavits to determine the facial validity of the search warrants.

criminal conviction or enhancement to his sentence for allegedly possessing an S/S (Street Sweeper Sales of GA), Model S/S 12 guage, Shotgun (Street Sweeper). Dkt. # 33, at 1. The government responds that Congress has the discretion to delegate authority to the executive branch as long its provides intelligible principles for use of that authority, and the statute in question constitutes a legitimate delegation of authority to the executive branch. Dkt. # 37.

Defendant is charged with possession of a firearm in furtherance of a drug trafficking crime (count seven) and possession of an unregistered destructive device (count twelve). In count seven, defendant is charged with possessing six firearms, including the Street Sweeper, in furtherance of a drug trafficking crime.[5] The government alleges in count twelve that defendant failed to register the Street Sweeper in the National Firearms Registration and Transfer Record and that this constitutes a separate offense. The statute at issue in this case is 26 U.S.C. § 5845(f), which provides:

> The term "destructive device" means . . . (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes . . . .

One court has provided the following description of the Street Sweeper:

---

[5] Although defendant requests dismissal of count seven, he is actually seeking a ruling that he is not eligible for an enhancement under 18 U.S.C. § 924(c)(1)(B)(ii) for possessing a destructive device. Count seven of the indictment alleges that defendant possessed five firearms in addition to the Street Sweeper, and he could be convicted of that count even if he receives a favorable ruling on his motion to dismiss. However, if the motion were granted, he would not be eligible for mandatory minimum sentence of 30 years that would run consecutively to any other sentence imposed if he were found guilty of possessing the Street Sweeper in furtherance of a drug trafficking crime.

> It is a black 12-gauge shotgun with a folding stock, double hand grips, and a 12-shell drum that rotates rapidly enough for 12 shots to be fired in less than 3 seconds. It has the appearance of a large machine gun. Expert testimony at trial established that the Street Sweeper was developed in South Africa, that its manufacture in the United States began in 1988, and that it has been the subject of federal registration requirements since 2001.

United States v. Brown, 2008 WL 2225762 (D. Ariz. May 28, 2008). The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) has issued a ruling classifying the Street Sweeper as a destructive device, because it has a barrel of greater than half an inch in diameter and it possesses features that do not make it suitable for any sporting purpose. ATF Ruling 94-2, ATF Q. Bull. 1994-1, 22, 24. The ATF is a division of the United States Department of Justice and falls under the authority of the United States Attorney General.

As a general rule, Congress may not delegate its power to make laws but it may give the executive branch "the authority to make policies and rules that implement its statutes." Loving v. United States, 517 U.S. 748, 771 (1996). The Supreme Court has stated that "[t]o burden Congress with all federal rulemaking would divert that branch from more pressing issues, and defeat the Framers' design of a workable National Government." Id. at 758. In order to delegate rulemaking authority to an executive agency, Congress must "lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform." Whitman v. American Trucking Associations, 531 U.S. 457 (2001) (quoting J.W. Hampton, Jr., and Co. v. United States, 276 U.S. 394, 409 (1928)). When Congress explicitly delegates authority "to elucidate a specific statutory provision, the agency's interpretation is given controlling weight unless arbitrary, capricious, or manifestly contrary to the statute." Mountain Side Mobile Estates Partnership v. Secretary of Housing and Urban Development, 56 F.3d 1243, 1248 (10th Cir. 1995).

In Demko v. United States, 216 F.3d 1049 (Fed. Cir. 2000), the Federal Circuit Court of Appeals rejected a gun owner's and a gun dealer's argument that § 5845(f) constituted an improper delegation of legislative authority by Congress. Penn Arms, Inc. (Penn Arms) sold a Street Sweeper to Thomas Demko, and Penn Arms paid a $200 transfer fee as required for the sale of a destructive device under the National Firearms Act. Id. at 1051. Penn Arms and Demko filed a refund suit claiming that § 5845 was invalid because, inter alia, Congress improperly delegated its legislative authority to the executive branch. The Federal Circuit Court of Appeals found that the phrase "generally recognized as particularly suitable for sporting purposes" provided an intelligible standard for the Attorney General to exercise his rulemaking authority. Id. at 1054. This classification was similar to other statutory classifications that were found to be valid delegations of rulemaking authority to the Attorney General. Id. The "sporting purpose" standard satisfied the intelligent principle test established under Supreme Court precedent, and § 5845 was a valid delegation of rulemaking authority by Congress.

Defendant argues that this Court should find § 5845 unconstitutional because the "delegation is far too broad and not based on intelligent factors." Dkt. # 33, at 4. He explains that "what constitutes a legal shotgun and what does not constitute a legal shotgun is something that should not be given to the Attorney General, because the result will not favor shotgun owners over those who choose not to own guns." Id. at 3. However, defendant cites only two cases in which legislation was actually invalidated as an improper delegation of Congressional authority. A.L.A. Schechter Poultry Corporation v. United States, 295 U.S. 495 (1935); Panama Refining Co. v. Ryan, 293 U.S. 388 (1935). Those cases were decided in 1935 and, since the New Deal cases were decided, the Supreme Court has not invalidated legislation as an improper delegation of legislative authority.

Loving, 517 U.S. at 771-72; United States v. Felts, 674 F.3d 599, 607 (6th Cir. 2012); United States v. Frank, 864 F.2d 992, 1010-11 (3d Cir. 1988). In this case, § 5845 states that a weapon will not constitute a destructive device unless it is has a barrel or bore of more than one-half inch in diameter, but it excepts shotguns "generally recognized as particularly suitable for sporting purposes" from this definition. The statute provides two significant limitations on the Attorney General's rulemaking authority. First, the weapon must have a barrel or bore of more than one-half inch in diameter, and this prevents the Attorney General from classifying a significant number of firearms or weapons as a destructive device. Second, the Attorney General is prohibited from classifying a weapon that would otherwise fall under § 5845(f)(2) as a destructive device if it is generally used for a sporting purpose. The statute provides an intelligible principle to guide the Attorney General in the exercise of his statutory authority. Defendant's argument is meritless and his motion to dismiss (Dkt. # 33) should be denied.

**III.**

Defendant argues that the affidavits for search warrants of 5647 N. Elgin Avenue and 4476 S. 211th East Ave were facially deficient and do not state sufficient facts from which a magistrate could have found probable cause to issue the search warrants.[6] Dkt. # 34. He asks the Court to suppress all evidence seized during the search of the residences. The government responds that

6 In the introduction of his motion to suppress, defendant states that he "has reason to believe the search warrant may have contained false statements." Dkt. # 34, at 1. This argument is not mentioned in the body of the defendant's motion, and defendant's argument focuses only on the RCI's veracity and credibility. The Court will consider defendant's argument as a general challenge to the RCI's veracity and credibility and any arguments that certain facts should not have been considered by the magistrate reviewing Dupler's affidavits, but the Court will not construct an argument for defendant that Dupler may have intentionally included false statements in his affidavits.

defendant is asking the Court to view the facts in isolation, and under the totality of the circumstances it is apparent that the affidavits establish probable cause for the issuance of search warrants. Dkt. # 38.

The Supreme Court has stated that probable cause is a "fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213 (1983). In the context of search warrants, the Tenth Circuit requires that a magistrate issuing a search warrant find that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Tisdale, 248 F.3d 964, 970 (10th Cir. 2001) (quoting Gates, 462 U.S. at 238). "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990). A magistrate may consider the affiant's experience as part of his probable cause determination. United States v. Soussi, 29 F.3d 565, 569 (10th Cir. 1994). When reviewing the search warrant affidavit, this Court must "interpret [the affidavit] in a common sense and realistic fashion." United States v. Grimmett, 439 F.3d 1263, 1270 (10th Cir. 2006). A reviewing court must show great deference to the magistrate's finding of probable cause and the magistrate's finding should be upheld if the magistrate had a "'substantial basis' for determining that probable cause existed." United States v. Perrine, 518 F.3d 1196, 1201 (10th Cir. 2008) (quoting United States v. Artez, 389 F.3d 1106, 1111 (10th Cir. 2004)).

Defendant asserts that the affidavits fail to state sufficient facts to show that the RCI provided reliable information to Dupler, and a reviewing magistrate could not have relied on any information provided by the RCI in the probable cause analysis. Dkt. # 34, at 8. He claims that Dupler made no effort to corroborate the RCI's information by conducting a controlled buy or

surveillance of the residences, and he had no reliable basis to believe that drugs were being stored in or sold from either residence. Id. at 9. He also argues that the RCI admitted to having a criminal background and this further detracts from the RCI's credibility. The government responds that defendant is viewing the facts in isolation and, under the totality of the circumstances, it is apparent that a reasonable magistrate could have made a finding that there was probable cause for the search of 5647 N. Elgin Avenue and 4476 S. 211th East Avenue. Dkt. # 38, at 2.

When probable cause is based on an informant's tip, "the court makes a probable cause determination based on the totality of the circumstances, including the informant's veracity, reliability, and basis of knowledge." United States v. Hendrix, 664 F.3d 1334, 1139 (10th Cir. 2011). These factors are not absolute requirements for a magistrate's reliance on information provided by an informant, and the reviewing magistrate must consider the totality of the circumstances in determining whether an informant's tip should be considered in the probable cause inquiry. Id. If there is sufficient independent corroboration of the informant's information, there is no need for a magistrate to consider the informant's credibility. United States v. Danhauer, 229 F.3d 1002 (10th Cir. 2000). If the basis for the informant's tip is not fully described in the affidavit, the court should consider whether the tip contains "the kind of highly specific or personal details from which one could reasonably infer that the [informant] had firsthand knowledge about the claimed criminal activity." United States v. Quezada-Enriquez, 567 F.3d 1228, 1233 (10th Cir. 2009).

In this case, Dupler's affidavit shows that he conducted a thorough investigation after receiving information from the RCI, and he did not attempt to rely solely on the statements of an informant when seeking a search warrant for the residence located at 5647 N. Elgin Avenue. The

RCI told Dupler that defendant was selling drugs from 5647 N. Elgin Avenue but that defendant actually lived at an unknown address in Broken Arrow, and that defendant was a member of the Hoover Crip Criminal Street Gang. Dkt. # 34-1, at 2. The RCI directed Dupler to 5647 N. Elgin Avenue and identified that as the location from which defendant was allegedly selling illegal drugs. Id. The RCI had observed or had learned from a third party that crack cocaine was packaged for sale at the residence, and the RCI stated that defendant distributed the crack cocaine from the residence. Id. Dupler verified the RCI's statement that defendant did not live at 5647 N. Elgin Avenue. He found that the defendant went to a hospital following a gunshot wound on December 20, 2008, and defendant listed his address as 7649 S. 169th East Ave in Broken Arrow. Id. This address does not exist. This shows that defendant claimed to live in Broken Arrow, rather than Tulsa, and that he was actively attempting to obscure the true location of his residence. This corroborates the RCI's information that defendant did not reside at 5647 N. Elgin Avenue. It also supports an inference that defendant was hiding the location of his true residence to evade detection by law enforcement officials, and that defendant maintained the residence at 5647 N. Elgin Avenue for illegally storing illegal drugs. The affidavit also states that the RCI has provided reliable information in other cases, and this was relevant to the RCI's reliability in this case.[7] United States v. Samuels, 493 F.3d 1187,

[7] Defendant believes that the RCI is the same informant used by TPD to obtain a search warrant for 3407 N. Lewis Avenue, Tulsa, Oklahoma, and no illegal drugs were found during that search. Dkt. # 34, at 9. However, he provides no evidentiary support for this assertion and, as defendant notes, "[f]irearms and drug trafficking are not the sorts of crimes where evidence is likely to remain stationary." Id. at 10 (citation omitted). The mere fact that drugs were not found in one search does not mean that the RCI provided bad information. The Court will assume that defendant's assertion is correct and that no drugs were found during one search for which the RCI provided a tip but, according the affidavit, this means that the RCI provided reliable information in at least five other investigations. Dkt. # 34-1, at 2.

1192-93 (10th Cir. 2007). Defendant argues that Dupler should have arranged a controlled buy or conducted additional surveillance to verify the RCI's information. However, the affidavit is clear that Dupler used other methods, such as electronic records, to verify important aspects of the RCI's information, and there is no precedent requiring a controlled buy or surveillance before a police officer seeks a warrant based on an informant's tip supported by corroborating evidence. Considering all of the facts stated in the affidavit, a magistrate could have considered the RCI's information reliable that defendant was distributing crack cocaine from 5647 N. Elgin Avenue and that defendant did not reside at the residence, and it would have been reasonable to infer that defendant used the residence to store illegal drugs. The RCI's reliability in prior investigations was also a relevant factor for consideration. This provides a substantial basis to find probable cause to issue a search warrant for this location, and evidence seized from the search of 5647 N. Elgin Avenue should not be suppressed.

The RCI did not specifically provide information about the residence located at 4476 S. 211th East Ave, and Dupler discovered solely through his own investigation that defendant could be using this address as a possible residence or as a storage facility for illegal drugs. Dupler was able to determine the true name of defendant's girlfriend through a records search, and he found evidence that, on January 20, 2009, a Janice "Sharee" Martin overdosed at 4476 S. 211th East Avenue. Dkt. # 34-1, at 2-3. The contact person for Martin was identified as "Brandon," and "Brandon" had the same phone number provided by defendant when he checked in to a hospital on December 20, 2008. Id. This suggests that "Brandon" and defendant were the same person, and it also suggests that some kind of illegal drugs were used or stored at the listed address. Dupler also determined that the billing address for defendant's phone number was 4476 S. 211th East Avenue,

and this provided additional evidence linking defendant to this address. Id. at 3. The fact that defendant had a substantial connection to a residence in Broken Arrow also provides corroboration of the information provided by the RCI that defendant actually lived in Broken Arrow. A magistrate could also have considered that Martin's overdose occurred only nine days before Dupler applied for a search warrant for this residence, because the temporal proximity suggests that defendant or illegal drugs could still be found at the residence. Under the totality of the circumstances, the Court finds that the affidavit provides sufficient facts from which a magistrate could have made a finding of probable cause to issue a search warrant for this address.

Even if the Court had found that one or both warrants were not supported by probable cause, the government argues that police relied on the warrants in good faith and, even if a Fourth Amendment violation occurred, no evidence seized should be suppressed. Dkt. # 38, at 3. There is a presumption that an officer relying on a warrant is acting in good faith and, although this presumption is not absolute, it "must carry some weight" with the Court. United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993). When an officer relies on a warrant issued by a neutral magistrate, the good faith rule should apply unless the "the underlying documents are 'devoid of factual support'" or the officer's reliance on the warrant was "wholly unwarranted." Id. The good faith exception applies when "'an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope,' even though the search warrant was later deemed to be invalid." United States v. Herrera, 444 F.3d 1238, 1249 (10th Cir. 2006) (quoting United States v. Leon, 468 U.S. 897, 920 (1984)). Excluding evidence obtained by police in good faith reliance on a search warrant would not deter future police misconduct and would penalize police for a magistrate's error in issuing the warrant. Leon, 468 U.S. at 920-21. In Leon,

the Supreme Court identified four exceptions to the good faith rule. If a warrant is invalid, the good faith rule does not prevent exclusion of evidence (1) "if the magistrate or judge issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) "where the magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979);" (3) in circumstances that "no reasonably well trained officer should rely on the warrant;" and (4) if a police officer relies on a warrant "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 922-23.

Even if the Court had found a Fourth Amendment violation, the good faith exception would be applicable and no evidence would be suppressed. Defendant argues that the warrants were so lacking in indicia of probable cause that no reasonable police officer would have relied on them. Defendant's motion to suppress is based on an impermissible one-sided view of the facts stated in the affidavits for search warrant, and the Court must show deference to the magistrate's finding of probable cause and must also interpret the affidavit in a "common sense and realistic fashion." Grimmett, 439 F.3d at 1270. The affidavits for search warrants establish that Dupler received information from an RCI and he attempted to verify significant aspects of this information by independently obtaining corroborating evidence, and the warrants were not issued under circumstances in which indicia of probable cause was so lacking that Dupler could not rely on the warrants to execute searches of the two residences.

**IT IS THEREFORE ORDERED** that Defendant Taylor's Motion to Dismiss Count Seven and Count Twelve Based on Improper Congressional Delegation of Authority (Dkt. # 33) and Defendant Taylor's Motion to Suppress Evidence (Dkt. # 34) are **denied**.

**DATED** this 16th day of May, 2013.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE